1            UNITED STATES DISTRICT COURT

2            WESTERN DISTRICT OF LOUISIANA

3                 ALEXANDRIA DIVISION

4    UNITED STATES OF AMERICA        *   CRIMINAL ACTION
                                     *   NUMBER 20-00099-01
5                                    *
     v.                              *   July 21, 2021
6                                    *   11:09 a.m.
                                     *
7    ERIC DEWAYNE ADDISON            *   Alexandria, Louisiana
                                     *
8    * * * * * * * * * * * * * * * *

9              S E C O N D   R E D A C T E D

10                   CHANGE OF PLEA

11
     Certified transcript of proceedings before the Honorable
12   Dee D. Drell, United States District Judge.

13
     APPEARANCES (Via Zoom):
14
     FOR THE GOVERNMENT:        Robert Frank Moody
15                              United States Attorney's Office
                                300 Fannin Street, Suite 3201
16                              Shreveport, Louisiana 71101-3068

17   FOR THE DEFENDANT:         Gerald J. Block
                                Post Office Box 53506
18                              Lafayette, Louisiana 70505

19
     REPORTED BY:               Myra Primeaux, RMR CRR CRC
20                              Post Office Box 14047
                                Alexandria, Louisiana 71315-4047
21                              Phone: (318) 442-3080

22

23

24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer.

1          THE COURT:  The first matter on the docket for

2    today is *United States v. Eric Dewayne Addison*, Docket

3    Number 20-CR-00099.

4        Would y'all make your appearances for the record,

5    please.

6          MR. MOODY:  Robert Moody for the government, with

7    my agent, Joe Bush.

8          MR. BLOCK:  Gerald Block for Eric Addison.

9          THE COURT:  All right.  And I conversed with

10   Mr. Addison before we went on the record.  I see him in the

11   square.

12       Mr. Addison, you can see everybody, including me; is

13   that right?

14         THE DEFENDANT:  Yes, sir.

15         THE COURT:  All right.  Well, this is going to be,

16   as I understand it, a proceeding for the entry of a guilty

17   plea.  And there's been consent filed for this matter to be

18   heard by video conferencing, in this case by Zoom, but I want

19   to be sure that everyone that is on the defense side is still

20   willing to proceed by this video conferencing, that is, Zoom

21   proceeding.

22       Mr. Block, are you still okay with that?

23         MR. BLOCK:  Yes, Your Honor, I am.

24         THE COURT:  And Mr. Addison, are you okay with

25   that?

```
 1              THE DEFENDANT:  Yes, sir.

 2              THE COURT:  All right.  You would otherwise have a

 3    right to be personally present, of course.

 4         But let me begin by asking about the filings in the

 5    case, particularly the Rule 11 packet.  Mr. Moody?

 6              MR. MOODY:  Yes, sir.  We have filed the Rule 11 --

 7    the government's filed the Rule 11 package under seal.

 8              THE COURT:  All right.  And Mr. Addison, a number

 9    of those documents had to be signed by you.

10         Did you go over a group of documents with your attorney,

11    Mr. Block?

12              THE DEFENDANT:  Yes, sir.

13              THE COURT:  And first of all, are you able to read

14    and write the English language?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  So you were able to go through those

17    documents yourself, in addition?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  All right.  And so if we see signatures

20    on there of Eric Dewayne Addison, those would be, in fact,

21    your signatures; is that right?

22              THE DEFENDANT:  Yes, sir.

23              THE COURT:  All right.  And Mr. Addison, do you

24    have any questions that you want to ask at this point as to

25    what's in those documents?
```

1           THE DEFENDANT:  No, sir, not at the moment.

2           THE COURT:  All right.  I want to tell you, the way

3    this works in a video conferencing mode is that if something

4    comes up during this proceeding -- I'm going to be entering

5    into a dialogue with you with a lot of questions and answers,

6    and if there's something that you don't understand, please

7    tell me and I'll be glad to reword it or rephrase it for you,

8    but if, beyond that, you feel like you need to talk to

9    Mr. Block about any of the issues, it is possible to set up

10   what's called a Zoom room or a side room for you and Mr. Block

11   to converse without any of the rest of us hearing about that

12   or hearing the contents.  So do you understand that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  All right.  I hope that won't happen a

15   lot in the proceeding, but if it's necessary, you tell us,

16   okay?

17          THE DEFENDANT:  Okay.

18          THE COURT:  All right.  Very good.

19      Mr. Moody, this looks like a non-victim offense.  Is

20   there anything having to do with the Victim Notification Act

21   or any claims for restitution?

22          MR. MOODY:  No claims, and it doesn't have anything

23   to do with that Act.

24          THE COURT:  All right.  Thank you.

25      All right.  Mr. Addison, although you have conferred

1   with your attorney, it's my duty to inform you this morning

2   I'm going to be asking you a number of questions after you've

3   promised to tell me the truth; and that being the case, if

4   your answers turned out to be substantively inaccurate, you

5   could be charged with perjury.

6        Now, that's not a threat against you.  I don't

7   anticipate that you intend to lie in any way in this

8   proceeding, but it is my duty to tell you that so you'll be

9   well informed of the conditions under which you answer

10   questions.

11        So do you understand that so far?

12             THE DEFENDANT:  Yes, sir.

13             THE COURT:  All right.  Then let's -- we've got to

14   do it this way.

15        Mr. Block, how does your client intend to plead?

16             MR. BLOCK:  Your Honor, Mr. Addison would tender a

17   plea of guilty to Count 5 of the indictment pursuant to the

18   plea agreement.

19             THE COURT:  All right.  Is that correct,

20   Mr. Addison?

21             THE DEFENDANT:  Yes, sir.

22             THE COURT:  All right.  Let me just go over that

23   with you.

24        The indictment in this case -- because, you know, this

25   is Count 5.  You know there are other counts as well against

1  you, and the only count that I intend to address in this

2  proceeding is Count 5, and I'll explain all of that later.

3      And Count 5 charges, in particular, the offense of

4  possession with intent to distribute methamphetamine.  And it

5  alleges that on or about October 25th, 2019, here in the

6  Western District of Louisiana, you knowingly possessed with

7  the intent to distribute 50 grams or more of methamphetamine,

8  which is a Schedule II controlled substance.  And the statute

9  charged as being violated is 21, United States Code, Sections

10  841(a)(1) and (b)(1)(A)(viii).

11      And is that the offense that you intend to plead guilty

12  to today?

13          THE DEFENDANT:  Yes.  Yes, Your Honor.

14          THE COURT:  All right.  Even though you have been

15  advised, probably, on everything I'm going to tell you by

16  Mr. Block, under Fifth Circuit rules and the jurisprudence;

17  that is, case law, I'm required to address three core concerns

18  before I accept your guilty plea.

19      And the first of those is whether the guilty plea is

20  coerced.  The second is whether you understand the nature of

21  the charge against you.  And the third is whether you

22  understand all the consequences of a plea of guilty.

23      So there are a number of questions I have to ask you to

24  assure myself that this is a valid guilty plea.  And if at any

25  time you don't understand something, as I said, please bring

```
 1   that to my attention and we'll try to get that clarified for

 2   you.  One of the most important things to me is that you fully

 3   understand everything we're doing here.  Okay?

 4               THE DEFENDANT:  Yes, sir.

 5               THE COURT:  All right.  I need for you at this

 6   point to raise your right hand.

 7          (Defendant sworn.)

 8               THE COURT:  All right.  Thanks.  You may put your

 9   hand down now.

10         Now, having been sworn, you understand, as I said

11   before, your answers to my questions will subject you to the

12   penalties of perjury or of making a false statement if you

13   don't answer truthfully.  Do you understand that?

14               THE DEFENDANT:  Yes, sir.

15               THE COURT:  All right.  Mr. Addison, what is your

16   age as of today?

17               THE DEFENDANT:  35.

18               THE COURT:  And what is your date of birth, please?

19               THE DEFENDANT:  ████████.

20               THE COURT:  All right.  And where are you from?

21               THE DEFENDANT:  I'm from Natchitoches, Louisiana.

22               THE COURT:  You pretty much grew up around there?

23               THE DEFENDANT:  Yeah, pretty much, like, off and

24   on.

25               THE COURT:  Okay.
```

1              THE DEFENDANT:  But I started staying in Pineville,

2    Louisiana, like, once my dad had gotten incarcerated.

3              THE COURT:  Okay.

4              THE DEFENDANT:  I spent a lot of time up there

5    working.

6              THE COURT:  All right.  You were born in

7    Natchitoches Parish?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  All right.  Well, that's good.

10       How much education do you actually have?

11             THE DEFENDANT:  A G.E.D.

12             THE COURT:  Okay.  And you said you can read and

13   write the English language.

14       Are you presently under a doctor's care for anything

15   having to do with mental issues?

16             THE DEFENDANT:  No, sir.

17             THE COURT:  Have you taken any drugs, medicine,

18   pills, or alcohol, anything like that in the recent past that

19   would prevent you from being clearheaded right now?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  Do you have any mental or physical

22   problems that you think would limit your ability to understand

23   what's happening in this proceeding?

24             THE DEFENDANT:  No, sir.

25             THE COURT:  All right.  So you understand why

1    you're in court today?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  All right.  You do have a right, of

4    course, to have the assistance of counsel at all stages of the

5    proceedings against you.

6         Have you had an ample opportunity now to go over this

7    case with Mr. Block?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  Are there any motions that you think he

10   should have filed for you that he's not filed?

11             THE DEFENDANT:  No, sir.

12             THE COURT:  And you're satisfied to have him assist

13   you with the case?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  All right.  Mr. Block, do you have any

16   doubt as to his competence to enter a plea at this time?

17             MR. BLOCK:  No, Your Honor, I have no doubt that he

18   is competent.

19             THE COURT:  All right.  Thank you.

20        Mr. Addison, under the constitution and laws of the

21   United States, you do have a right to plead not guilty and to

22   have the charge tried by a jury of 12 people, all of whom

23   would have to agree on a verdict.  Do you understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  And also, at the trial, you would be

1    presumed to be innocent, and the government would have the

2    burden of coming forward with evidence to prove you guilty

3    beyond a reasonable doubt.  In other words, you don't have to

4    prove your own innocence at the trial.  Do you understand that

5    as well?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Also, in the course of the trial, the

8    witnesses for the government would have to come to court and

9    testify in your presence, and your attorney would have the

10   right to confront and cross-examine the witnesses against you,

11   he could object to evidence being offered by the government,

12   and he could also offer evidence on your behalf if you chose

13   to have him do that.  Do you understand those things?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  And also, if there were favorable

16   witnesses that you and your attorney wanted at the trial, and

17   if those people said they could not or would not come, you

18   could use the Court's subpoena power to make them appear.  Do

19   you understand that?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  All right.  Also, at the trial, you

22   would have the right to testify if you chose to do that, but

23   you would also have the right not to be compelled to

24   incriminate yourself and therefore the right not to testify,

25   and it's a constitutional right.  Do you understand that?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And also, if you had a trial and you

3    chose not to testify, the jury could not for that account

4    convict you on the violation being tried, and this would be

5    waived, meaning given up by your guilty plea.  Do you

6    understand those things?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  Also, Mr. Addison, if you continue in

9    the guilty plea and if I accept your plea, you understand you

10   will have waived your right to a trial and all the other

11   rights I've just discussed?  There would be no further trial.

12   I would enter a judgment of guilty at the end of this

13   proceeding and sentence you at a later date just on the basis

14   of the guilty plea.  Do you understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  All right.  Also, if you continue in

17   the guilty plea, do you also understand you will have to waive

18   your right not to incriminate yourself since I will ask you

19   again at the end of this proceeding what you did in order to

20   satisfy myself that you're guilty as charged?  You acknowledge

21   your guilt in court today.  Do you understand that as well?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Then Mr. Addison, are you willing to

24   waive and give up your right to a trial and all the other

25   rights I've just discussed?

1            THE DEFENDANT:  Yes, sir.

2            THE COURT:  Has anybody threatened you or leaned on

3   you or forced you to plead guilty?

4            THE DEFENDANT:  No, sir.

5            THE COURT:  Has anybody told you that if you don't

6   plead guilty, there would be other charges brought against

7   you?  And by that, I mean charges outside of the present

8   indictment.

9            THE DEFENDANT:  No, sir.

10           THE COURT:  All right.  Anybody threaten any other

11  kind of adverse action against you?

12           THE DEFENDANT:  No, sir.

13           THE COURT:  All right.  This offense, of course, to

14  which you're offering to plead guilty is a felony offense, and

15  if your plea is accepted, you will be found guilty of that,

16  and that could deprive you of valuable civil rights, including

17  the right to vote, the right to hold public office, the right

18  to serve on a jury, and the right to possess any kind of

19  firearm.  Do you understand those things as well?

20           THE DEFENDANT:  Yes, sir.

21           THE COURT:  All right.  Then Mr. Addison, are you

22  willing to plead guilty because you are in fact guilty as

23  charged?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  And is this a completely free and

1    voluntary act on your part?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  All right.  Give me one second here.

4        Now, the indictment that I went over partially with you,

5    you did receive and read a copy of that?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  And you fully discussed all that with

8    your attorney, I assume.

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  All right.  Even though you have

11   discussed the matters regarding the particular offense, I am

12   still required to tell you what the government would have to

13   prove beyond a reasonable doubt if you had trial on this Count

14   Number 5.  And let me get to that here.

15       All right.  The elements of the offense -- I see an

16   error on the page.  It's called Elements of the Offense.  It

17   says Count 1.  This is for Count 5.

18             MR. MOODY:  For the record, Judge, those are the

19   same charge.

20             THE COURT:  I'm aware of that.

21             MR. MOODY:  Okay.

22             THE COURT:  But I'm just going to make that

23   correction on here that it's Count 5, and the record document

24   should be corrected in that regard.

25       So the charge, again, is possession with intent to

1    distribute methamphetamine.  And the date, again, is

2    October 25th, 2019, for Count 5.

3         So, Title 21, United States Code, Section 841(a)(1)

4    makes it a crime for anyone to knowingly or intentionally

5    possess with intent to distribute a controlled substance.

6    Methamphetamine is a controlled substance within the meaning

7    of the law.

8         And for you to be found guilty of this crime, the

9    government would have to prove each of the following beyond a

10   reasonable doubt:

11        The first is that you, the defendant, knowingly

12   possessed a controlled substance;

13        The second is that the substance was in fact

14   methamphetamine;

15        Third; that you, the defendant, possessed the substance

16   with intent to distribute it; and

17        Fourth; in this case that the quantity of the substance

18   was at least 50 grams or 500 grams or more of a mixture

19   containing a detectible amount of methamphetamine, its salts,

20   isomers, or salts of its isomers.

21        So do you understand those elements?

22             THE DEFENDANT:  Yes, sir.

23             THE COURT:  Do you need me to go over those again?

24             THE DEFENDANT:  No, sir.  I understand them.

25             THE COURT:  All right.  In this case the mandatory

1    minimum penalty for Count 5 is ten years in jail, plus a fine

2    of up to $10 million.  And I will tell you that the penalty is

3    actually ten years to life imprisonment.  That doesn't mean

4    that's what you will get.  That is the maximum possible

5    penalty.

6        Also, because the maximum sentence is 25 years or more,

7    a sentence of probation is not applicable under the statutes.

8    Do you understand that?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Now, I've told you about those

11    statutory provisions.  There's also something called

12    guidelines that the Court uses.  We're limited by what the

13    statutes say, so there is a minimum ten-year sentence in this

14    case as it presently stands.  However, the guidelines are

15    calculated and may have an impact on where the sentence

16    actually falls.  And the guidelines come in a separate book,

17    and I'll tell you more about that in a minute, but basically

18    everybody gets -- we get copies of a document that explains

19    the guidelines.

20        The guidelines are just a starting point for the Court,

21    they're not mandatory, and the Court has the authority to

22    depart or vary from the guideline calculations either upward

23    or downward when we actually do the sentencing.  So do you

24    understand that?

25          THE DEFENDANT:  Yes, sir.

1          THE COURT:  All right.  Well, this is a drug case,

2     and I need to tell you that in the guideline calculations, one

3     of the things that's determined is what's called an offense

4     level, and that level often will be affected by the quantity

5     of drugs that are involved in the case.

6          Now, I need to know whether there's been conversation

7     and whether any promises have been made to you with regard to

8     drug quantities that are going to be used in calculating the

9     sentence in this case.  So Mr. Moody, can you address that?

10          MR. MOODY:  Yes, sir.  And I'll do the relevant

11     conduct for each count so it's just clear what that would be.

12          For Count 1, the search warrant that came from

13     Natchitoches, was 140 grams of methamphetamine.  Count 2 would

14     be 6.68 grams of heroin.  Count 3 would be 3.9 grams of

15     heroin.  Count 4 was approximately an ounce, 28 grams, of

16     methamphetamine.  And Count 5 was -- initially the rough

17     weight was 86.9 grams of meth, but with the purity

18     calculation, it was 74.07 grams of methamphetamine.

19          THE COURT:  All right.  Do you understand what the

20     government's lawyer has just said, Mr. Addison?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  I can't state it fully right now that

23     those are going to be the actual numbers that go into the

24     calculation, but that's what's been discussed, and I don't

25     want you to be confused at all that they could be up to those

1      amounts.  Do you understand that?

2                    THE DEFENDANT:  Yes, sir.

3                    THE COURT:  All right.  Mr. Block, do you have any

4      comment with regard to that?

5                    MR. BLOCK:  No, Your Honor.

6                    THE COURT:  All right.  Well, as I said, the Court

7      has the authority to make departures, either upward or

8      downward, in the guidelines subject to what the statutes

9      require, but either party has the right and ability to appeal

10     any guideline determinations that are made by the Court.  So

11     do you understand that as well?

12                    THE DEFENDANT:  Yes, sir.

13                    THE COURT:  All right.  Also, under the Sentencing

14     Reform Act which is applicable in the case, you could receive

15     a term of supervised release of not less than five years, and

16     that could be up to life of that supervised release, and that

17     would be in addition to any term of imprisonment that the

18     Court may impose.

19          Let me explain to you a little bit about supervised

20     release.  As I just said, it is something that can be added to

21     the end of a sentence.  And by that, I mean after -- in

22     federal court, if you serve any period of incarceration,

23     supervised release can then come into play afterward if the

24     Court orders it.

25          Now, supervised release comes with certain terms and

1    conditions; in other words, rules you have to follow.  And if

2    you follow the rules for whatever period of time you're on

3    supervised release, nothing else happens.  If you don't, it is

4    possible for you to be ordered back to court on a revocation

5    proceeding.  And if you're brought back to court and if you

6    you're revoked, you could be sentenced to additional time in

7    prison over and above the initial period of incarceration.

8    And so the period of incarceration for a violation of a

9    condition or term of supervised release could be as much as

10   the full term of supervised release initially ordered, and

11   that's regardless of the amount of supervised release you had

12   completed.  You don't get good time on supervised release.  Do

13   you understand that also?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  All right.  Now, plea agreements, of

16   course, are permissible, and you and each of the lawyers have

17   a duty to disclose the existence and any terms of such

18   agreements, and I'll ask you about that in a minute.

19       There are a couple of other things in the plea agreement

20   that are important for you to know.  One is, as stated, I have

21   to assess you the amount of $100 per count, and that's a total

22   of $100, and that has to be paid to the clerk of court.

23       Is the government satisfied that will be handled

24   appropriately?

25              MR. MOODY:  Yes, sir.

1          THE COURT:  All right.  There's also -- I'm going

2   to mention the term "restitution" to you.  The government's

3   already indicated this probably is not a restitution-type

4   case, but this is the one chance I get to talk to you about

5   all the things that could happen in a case, and restitution is

6   one of those in the appropriate case.

7       And so the Court has, in the appropriate case, the

8   ability to order a defendant to make restitution, and both the

9   amount of restitution and method of payment is in the Court's

10  discretion.  So do you understand that also?

11         THE DEFENDANT:  Yes, sir.

12  ████████████████████████████████████████

13  ██████████████████████████████████████████████

14  █████████████████████████████████████████████

15  ███████████████████████████████████████████████

16  ████████████████████████████████████████████

17  ██████

18      ████████████████████████████

19         THE COURT:  All right.  Mr. Addison, has anybody

20  made any promises to you other than those contained in the

21  plea agreement?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  All right.  Counsel, would you each

24  indicate whether there are any side agreements whatsoever?

25         MR. MOODY:  No side agreements, Judge.

1          MR. BLOCK:  There are no side agreements, Your

2    Honor.

3          THE COURT:  All right.  Thank you.

4      So what will happen after today, Mr. Addison, there will

5    be a document prepared by the folks in Probation and Pretrial

6    Services.  The document is called a presentence investigation

7    report.  It will amass a lot of information about you and

8    about the case.  It will have personal information about you,

9    and you'll have the opportunity to have input into what goes

10   in it, but it will also have a calculation of the guideline

11   ranges that I told you about.  It will also have some of the

12   rules about which you use to apply guidelines, and it will

13   also have a section that will have to do with your criminal

14   history, if you have one.

15         Now, all of that will be then, as I say, compiled into a

16   report, and it will be furnished to the lawyers and it will be

17   furnished to me as well.  We will all have the opportunity to

18   review it.  You will have the opportunity to review it with

19   your lawyer.  And if there are any objections to anything in

20   the report, the lawyers have the opportunity to file those

21   objections with the Court.  We'll look at those and take a

22   serious look at them and see what they say, and if there are

23   corrections that need to be made, we'll make them.

24         Following that, the lawyers will also have the

25   opportunity to argue for whatever sentence they deem

1    appropriate by submitting briefs to the Court arguing for a

2    particular sentence.  So you'll have, again, the opportunity

3    to discuss all those matters with Mr. Block before the

4    sentencing date.  So do you understand that?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  So there will be the opportunity, as I

7    said, for the lawyers to make recommendations of sentence.

8    Those are just recommendations, none of them are binding on

9    the Court, and it is possible that you could receive, just on

10   the basis of the guilty plea, a sentence more severe than that

11   requested or recommended by any lawyer in the case.  Do you

12   understand that?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  All right.  A lot of this, what I'm

15   trying to tell you, is your sentence is entirely up to me, and

16   I gather you figured that out.  Do you understand?

17             THE DEFENDANT:  Yes, sir.

18             THE COURT:  All right.  Has anybody made a

19   prediction or a prophecy or a promise to you as to what your

20   sentence would actual actually be?

21             THE DEFENDANT:  No, sir.

22             THE COURT:  Okay.  So once I get this presentence

23   investigation report, we will look at it and be sure it is

24   correct in the guideline calculations.  So I will consider the

25   correct guideline ranges in this case.  I will also consider,

1    however, certain other sentencing factors under a separate

2    statute called 18, United States Code, Section 3553(a).  Give

3    me one second.

4        So that statute requires that I consider a number of

5    factors in imposing a sentencing on you in this case.  The

6    factors include the nature and circumstances of the offense

7    and the history and characteristics of a defendant; the need

8    for the sentence imposed to reflect the seriousness of the

9    offense, promote respect for the law, and provide just

10    punishment for the offense; the need to afford adequate

11    deterrence to criminal conduct; the need to protect the public

12    from further crimes of the defendant; the need to provide the

13    defendant with needed educational or vocational training or

14    medical care or other correctional treatment in the most

15    effective manner.  Then there are the kinds of sentences that

16    are available.

17        The guidelines themselves are actually one of the

18    factors, but they're handled separately as I explained, but

19    there's also the need to avoid unwarranted sentencing

20    disparities among defendants with similar records found guilty

21    of similar conduct.  And the last one that I've already

22    mentioned to you is, in appropriate cases, the need to provide

23    any restitution.  So I will consider all of those things.

24        Once again, your sentence is entirely up to me, not up

25    to the lawyers.  And do you understand that?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  So you would also have the right to

3    appeal any sentence that I impose upon you, but the failure of

4    the Court to adhere to any sentencing recommendation by any

5    lawyer in the case is not a basis to set aside the guilty

6    plea.  Do you understand that?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Now, there is an agreement in this case

9    that if you successfully plead guilty to this Count 5, all the

10   other counts in this indictment will be dismissed.  And you

11   understand that to be true?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  That dismissal, I need to tell you,

14   will not occur until the time of sentencing.  It won't happen

15   today, but once you plead guilty successfully, the government

16   is bound to dismiss the other charges.  Do you understand

17   that?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  All right.  Mr. Moody, do you have a

20   witness, please?

21          MR. MOODY:  I do.  At this time the government

22   calls Joe Bush.

23      (Witness sworn.)

24          THE COURT:  All right.  You may put your hand down

25   and respond to questions from the attorneys.

```
1                          DIRECT EXAMINATION

2      BY MR. MOODY:

3      Q.    Could you state your full name for the record?

4      A.    Joseph Michael Bush.

5      Q.    How are you employed?

6      A.    With the Federal Bureau of Investigation as a special

7      agent.

8      Q.    What are your duties there?

9      A.    Investigate a series of violations to include drug

10     trafficking, just to name one example.

11     Q.    Have you recently become acquainted with this case?

12     A.    Yes, I have.

13     Q.    Was the original agent on the case Tim Ledet?

14     A.    Yes, sir, that is correct.

15     Q.    Okay.  And who was Tim Ledet, or who is Tim Ledet?

16     A.    Tim was a task force officer that was deputized in our

17     office and worked hand in hand with the agents here in our

18     office, and he's recently retired.

19     Q.    As part of his work in your office, did he run an

20     investigation on Eric Dewayne Addison, the defendant?

21     A.    Yes, he did.

22     Q.    Did that involve a series of controlled buys by a

23     confidential informant?

24     A.    Yes.  Yes, it did.

25     Q.    And were those controlled buys recorded?
```

1    A.    Yes, they were.

2    Q.    Okay.  On September 10th, 2019, was a controlled buy

3    performed on the defendant?

4    A.    Yes, that's correct.

5    Q.    Okay.  And what was purchased from the defendant on that

6    day?

7    A.    I believe it was methamphetamines.

8    Q.    On the September day, would that be heroin?

9    A.    That is correct.

10   Q.    Okay.  And then again on September 24th, 2019, was

11   heroin purchased from the defendant?

12   A.    That is correct.

13   Q.    And then October 14th, 2019, was another controlled buy

14   performed on the defendant?

15   A.    That is correct.

16   Q.    And was about, approximately, an ounce of

17   methamphetamine purchased from the defendant in that

18   transaction?

19   A.    Yes, that's correct.

20   Q.    Based on those purchases and other surveillance of the

21   defendant, was a search warrant obtained for the defendant's

22   residence?

23   A.    Yes, sir, it was.

24   Q.    And was that search warrant executed on October 25th,

25   2020?

1    A.    Yes, sir.

2    Q.    Pardon me.  2019.  2019.

3    A.    Yes, sir.

4    Q.    Did agents search the defendant's residence?

5    A.    Yes, sir, that's correct.

6    Q.    Did they locate any methamphetamine there?

7    A.    I'd have to review the notes on that.

8    Q.    Okay.  Based as part of a search warrant, the agents,

9    did they discover methamphetamine?

10   A.    Yes, that's correct.

11   Q.    Okay.  Did they also discover ten cellular phones and

12   numerous scales?

13   A.    Yes, sir.

14   Q.    The methamphetamine, was it sent to the laboratory?

15   A.    Yes, that's correct.

16   Q.    And would the total amount of pure methamphetamine have

17   been 74.077 grams?

18   A.    Yes, that's correct.

19   Q.    And based on your training and experience, is that a

20   distribution amount?

21   A.    Yes, sir, it is.

22   Q.    And would the scales and multiple cell phones also

23   indicate distribution?

24   A.    Yes, sir.

25              MR. MOODY:  At this time I'll tender the witness,

1    Judge.

2          THE COURT:  All right.  Mr. Block, do you have any

3    questions?

4          MR. BLOCK:  Yes, Your Honor, just to clarify.

5                      CROSS-EXAMINATION

6    BY MR. BLOCK:

7    Q.   On September 10th, 2019, the controlled substance

8    purchased was heroin; is that correct?

9    A.   Yes, sir, that is correct.  It was heroin.

10   Q.   And on September 24th, 2019, the controlled dangerous

11   substance purchased was heroin?

12   A.   That's correct.

13         MR. BLOCK:  That's all I have, Your Honor.

14         THE COURT:  All right.  Thank you very much.

15       I don't have any additional questions.  Thank you, Agent

16   Bush.

17         THE WITNESS:  Yes, sir.

18         THE COURT:  Mr. Addison, let me turn back to you,

19   sir.  We've gone through everything with you at this point,

20   including the elements of the offense.  Do you need me to

21   repeat anything that I've gone over with you?

22         THE DEFENDANT:  No, sir.

23         THE COURT:  Do you think you understand it?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  And so do you understand each of the

1  elements that I explained and agree that you've committed each

2  and every one of those?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  All right.  Then having heard my

5  explanation of the elements, the maximum penalty, all of your

6  rights given up and all the consequence of a plea of guilty, I

7  need to know if you still wish to continue in the guilty plea?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  All right.  Then as to Count 5 of the

10 indictment only, I ask you formally:  How do you plead?

11         THE DEFENDANT:  Guilty, Your Honor.

12         THE COURT:  All right.  Thank you.  I'm satisfied

13 that Eric Dewayne Addison fully understands the nature of the

14 charge against him, the consequences of a plea of guilty, and

15 I find the plea entered to be voluntarily and knowledgeably

16 entered and the plea of guilty is accepted as entered.

17 Likewise, the written plea agreement submitted to the Court is

18 accepted in accordance with Rule 11(c)(4).

19     And I am calendaring this for sentencing on

20 November 5th, 2021, at 3:00 o'clock p.m.  I will tell y'all

21 there are some sentencings in front of that.  It could be

22 slightly delayed, but it should be approximately 3:00 p.m., so

23 be prepared to do that at that time.

24     Mr. Addison, I told you that you'll have some

25 opportunity to have input into the presentence investigation

1    report, so you'll need to continue to work with Mr. Block, and

2    he'll assist you in being certain that information furnished

3    to Probation Services and to the Court is accurate

4    information.

5         And I don't know whether Probation would need them or

6    not -- sometimes they need somebody's tax returns for

7    calculation of income and things like that.  If Probation

8    needs them, it would be necessary for you to furnish those

9    within 45 days, if possible.  If you don't have them or

10   they're not available and if they need them, there would be

11   forms you would need to sign to request those from the IRS.

12             THE DEFENDANT:  Yeah.

13             THE COURT:  Now, for counsel's benefit, you are all

14   provided an opportunity, as I said, to argue for whatever

15   sentence you deem appropriate by submitting a brief to the

16   Court on your position no later than 15 days before the

17   sentencing date.  And under the Local Rule 32.2, those briefs

18   have to be filed by counsel under seal with a confidential

19   copy submitted directly to the Probation Office and to the

20   Court, to my chambers.

21        In evaluating your arguments, I certainly will consider

22   all of those mentioned 3553(a) factors to determine whether

23   they support the sentence you're requesting, so tailor your

24   briefing accordingly if you like.

25        If you wish to file a reply brief, you may do that

1    within five days of receipt of the original brief.  And the

2    filing of the original brief is not mandatory, but if you

3    don't file an original brief, you will waive your right to

4    file a reply brief to the opponent's original.

5         And the submission of the presentence brief does not

6    relieve any party from the obligation of providing the

7    probation officer with written objections to the presentence

8    report within 14 days from date of receipt under Federal Rule

9    and Local Rule 32.

10        All right.  That about does it except to simply address

11   further detention at this point.  What's the government's

12   position with regard to continued detention?

13             MR. MOODY:  He should remain detained.

14             THE COURT:  Mr. Block, do you have any input on

15   that?

16             MR. BLOCK:  No, Your Honor.  He's currently under a

17   state hold as well, so I have no objection or input, Your

18   Honor.

19             THE COURT:  All right.  So yeah, that's correct.

20   There is also a presumption for continued detention at this

21   point as a matter of law because he has now a federal

22   conviction.  So the order of detention pre-existing will

23   remain and he will remain detained up to sentence in the case.

24        All right.  Anything else from the lawyers?  Anything

25   else to be put on the record?

```
 1              MR. MOODY:  Nothing from the government.

 2              MR. BLOCK:  Nothing from the defense, Your Honor.

 3              THE COURT:  All right.  Well, Mr. Addison, I want

 4   to say you've been very respectful today, and I appreciate

 5   that very much.  I wish you the best in the meantime.

 6              THE DEFENDANT:  Thank you, Your Honor.

 7              THE COURT:  All right.  If nothing else, we are

 8   adjourned for the day.  Thank y'all for your participation

 9   today.

10              THE DEFENDANT:  Thank you.

11              MR. MOODY:  Thank you.
```

**CERTIFICATE**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*s/ Myra Primeaux*                   Date:  April 26, 2024
Federal Official Court Reporter

**REDACTION CERTIFICATION**

I certify that the foregoing is a true and correct copy of the transcript originally filed with the clerk of court on April 26, 2024, and incorporating redactions of personal identifiers requested by the following attorney of record, Cristina Walker, in accordance with Judicial Conference policy. Redacted characters appear as a black box in the transcript.

*s/ Myra Primeaux*                   Date:  May 29, 2024
Federal Official Court Reporter

1          **SECOND REDACTION CERTIFICATION**

2    I certify that the foregoing is a true and correct copy of the
     transcript originally filed with the clerk of court on April
3    26, 2024 and incorporating redactions of personal identifiers
     requested by the following attorney(s) of record, Elizabeth
4    Cary Dougherty, in accordance with Judicial Conference policy.
     Redacted characters appear as a black box in the transcript.

5
     s/ *Myra Primeaux*                       Date:  August 9, 2024
6    Federal Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25